UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FAUSTO SEVILA and
CANDIDA SEVILA,

    Plaintiffs,

v.                          CASE NO.: 8:13-cv-00978-EAK-TGW

FIRST LIBERTY INSURANCE CORPORATION,

    Defendant.

_____/

## ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Plaintiffs' Dispositive Motion for Summary Judgment (Doc. 17), and Defendant's Response in Opposition, (Doc. 19). For the reasons set forth below, Plaintiffs' motion is **GRANTED**.

### PROCEDURAL HISTORY

First Liberty Ins. Corp. ("Defendant") removed this case to the Middle District of Florida (Doc. 1). Plaintiffs, Fausto and Candida Sevilla ("Plaintiffs"), filed an amended Complaint (Doc. 2) on April 17, 2013. Defendant filed its answer to amended complaint (Doc. 5) on April 17, 2013. Plaintiff seeks a declaratory judgment as to the rights and responsibilities of the parties under the insurance policy in dispute (Doc. 17). Defendant filed its Response in opposition on August 7, 2013 (Doc. 19). Plaintiffs filed its Notice of Supplemental Authority (Doc. 28) in support of Plaintiffs' Motion for Summary Judgment on February 26, 2014.

## STATEMENT OF THE FACTS

This is an action for breach of contract and declaratory judgment arising out of an insurance policy issued by Defendant to Plaintiffs. The parties in support and/or opposition to Plaintiffs' Motion submit the following facts for Summary Judgment. The Court recognizes these as "facts" only in regard to the resolution of the pending motion.

At all material times, Plaintiffs owned the property ("the insured property") located at 8018 N. Hale Avenue, Tampa, Florida. Defendant provided property insurance to Plaintiffs under policy number H32-251-065589-4000 ("The policy"), with effective dates of August 25, 2010 through August 25, 2011. (Doc. 17, ¶ 2) Plaintiffs' claimed damage to the Insured property was discovered on May 24, 2011. (Doc. 17, ¶ 3) The policy provides:

**SECTION 1: PERILS INSURED AGAINST**

The following perils are added:

**Sinkhole Loss**

a. Sinkhole Loss means structural damage to the building, including the foundation, caused by sinkhole activity. Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.

   (1) We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you.

b. Sinkhole Activity means settlement or systemic weakening of the earth supporting such property only when such settlement or systemic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on limestone or similar rock formation.

   The Section I - Earth Movement Exclusion does not apply to this peril.

(Doc. 17, ¶ 5)

After sending Florida Geotechnical Engineering, Inc. ("FGE") to investigate, Defendant denied Plaintiffs' claim based on FGE's conclusion that the insured property did not experience

"structural damage" as defined by Fla. Stat. § 627.706 (2011). (Doc. 17, ¶¶ 6-8) After Defendant denied Plaintiffs' claim, on October 2, 2012, Plaintiffs requested Defendant perform full geotechnical testing consistent with applicable current Florida Statutes. (Doc. 17, ¶ 9) On October 5, 2012, Defendant refused to conduct additional testing. *Id.* On October 15, 2013 (sic), Plaintiffs again requested that Defendant perform full geotechnical testing consistent with applicable current Florida Statutes. (Doc. 17, ¶ 10) On October 22, 2012, Plaintiffs filed a Civil Remedy Notice of Insurer Violation notifying Defendant of its deficiencies and bad faith claims handling for its retroactive application of a law and refusal to conduct full geotechnical testing in direct contravention to Florida Law. *Id.* On November 5, 2012, Defendant prepared a responsive correspondence confirming its reliance on the 2011 Florida Statute definition of structural damage and sinkhole loss. *Id.*

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for its motion for summary judgment and "identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 411 U.S. 317, 323 (1986). The moving party meets its burden if it demonstrates "an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving party to identify specific facts that demonstrate a genuine issue of material fact in order to avoid summary judgment. *Id.* at 324.

An issue of fact is "genuine" only if a reasonable jury, after considering the evidence presented, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A factual issue is "material" if it might affect the outcome of the trial under the governing substantive law. *Id.* at 248; *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). When ruling on a motion for summary judgment, the Court must view all inferences to be taken from the facts in the light most favorable to the nonmoving party. *U.S. v. Diebold*, 369 U.S. 654, 655 (1962). The weighing of evidence, the determination of credibility, and the drawing of reasonable inferences from the facts are all functions of the jury, not the judge. *Anderson*, 477 U.S. at 255. Therefore, if determination of the case rests on deciding which competing version of the facts and events is true, then summary judgment is inappropriate and the case should be submitted to the jury. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

## DISCUSSION

From 1981, Florida Statute 627.706(1) required that insurers make coverage available for sinkhole loss. *Universal Ins. Co. of N. Am. v. Warfel*, 82 So. 3d 54 (Fla. 2012). During that time, the definition of "sinkhole loss" contained a separate definition for the term "loss" which it defined as "structural damage to the building." *Zawadzki v. Liberty Mutual Fire Ins. Co.*, 2012 WL 3656456, at *3 (M.D. Fla. 2012).

In 2005, the Florida Legislature redefined a "sinkhole loss" as "structural damage to the building, including the foundation, caused by sinkhole activity." *Universal Ins. Co. of N. Am.*, 82 So. 3d at 55-56. The 2005 definition incorporated the previous definition of the term "loss" and that term was removed from the statute. *Bay Farms Corp. v. Great American Alliance Ins. Co.*, 835 F. Supp. 2d 1230 (M.D. Fla. 2011). The 2005 version also added definitions for other terms

such as "sinkhole" and "sinkhole activity." *Id.* A separate definition for the term "structural damage" was not included. *Id.*

In 2011, the Florida Legislature defined "structural damage" to be applied to insurance policies providing coverage for sinkhole losses. *Id.* The 2011 Amendment went into effect on May 17, 2011. As amended, the statute provides:

> (j) "Sinkhole loss" means structural damage to the covered building, including the foundation, caused by sinkhole activity. Contents coverage and additional living expenses apply only if there is structural damage to the covered building caused by sinkhole activity.
>
> (k) "Structural damage" means a covered building, regardless of the date of its instruction, has experienced the following:
>
> 1. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117 - 90 or the Florida Building Code, which results in settlement-related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;
>
> 2. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318 - 95 or the Florida Building Code, which results in settlement-related damage to the primary structural members or those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;
>
> 3. Damage that results in listing, leaning, or buckling of the exterior load-bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined with the Florida Building Code;
>
> 4. Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the

>influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or
>
>>5. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

See FLA. STAT. 627.706(j)-(k) (2011).

Defendant claims that the dispute in this case is that Plaintiffs are requiring a "full subsidence test", which is a term not used in either the 2011 or prior versions of sections 627.707, 627. 7072, and 627.7073. (Doc. 19 at 8-9) Defendant, for its part, contends that the Florida Legislature intended the 2011 Amendment to be remedial and procedural in nature as opposed to substantive, (Doc. 19 at 12) and that the term "structural damage" does not mean "physical damage" to a building. *Id.* Defendant contends the definition in the 2011 amendment merely clarified the definition of "structural damage." (Doc. 19 at 13) Thus, Defendant contends, the Amendment should apply retroactively since "it does not change but merely clarifies the rights and responsibilities of the party to the contract." *Id.* Moreover, regardless of which version of the statute is used both contain a proscription that, "there shall be no cause of action or liability against an insurer for compliance with this section." (Doc. 19 at 9) Therefore, the initial test done by FGE and the finding that there was no "structural damage" as defined by Fla. Stat. § 627.706 (2011) was sufficient. *Id.* However, the core of Plaintiffs' claim is not about the need to perform a full subsidence test. The issue before the Court on Plaintiffs' Summary Judgment motion is whether there was a breach of contract when Defendants applied a 2011 amendment to the Florida statutory scheme governing sinkhole insurance that added a definition of "structural damage" to the policy in determining whether or not sinkhole activity existed at the insured property. (Doc. 17 at 5)

This district has had numerous decisions, which have addressed the legal issues in this case. In *Ayres v. USAA Casualty Ins. Co.*, 2012 WL 1094321 (M.D. Fla. 2012), the court held that the undefined phrase "structural damage" in insurance policy means "damage to the structure." Furthermore, this district has held that the 2011 Amendment to Florida Statute 627.706 cannot be applied retroactively to insurance policies that predate the enactment of the 2011 Amendment and that, as defined in Ayres, the undefined term "structural damage" means "damage to the structure." *Zawadzki*, 2012 WL 3656456 at *3 (M.D. Fla. 2012). *Leon v. The First Liberty Ins. Corp.*, 2012 WL 5417294 (M.D. Fla. 2012) also held that the 2011 Amendment does not retroactively apply to insurance policies that predate its enactment and that the phrase "structural damage" should be read according to its plain meaning to mean "damage to the structure." *Garcia v. First Liberty Ins. Corp.*, 2012 WL 5328660, at *2 (M.D. Fla. 2012) also determined the 2011 Amendment does not retroactively apply to insurance policies that predate its enactment and that the phrase "structural damage" is defined as "damage to the structure". Most recently, *Shelton v. Liberty Mutual Ins. Co.*, 2013 1663290, at *3 (M.D. Fla. 2013), held "with respect to the undefined phrase 'structural damage,' numerous Florida trial courts and courts within this district, including this Court, have already held that the phrase should be read according to its plain meaning ... the phrase 'structural damage' is defined as 'damage to the structure.'"

Should this Court accept Defendant's position, the Court would be ignoring numerous decisions from this District that have addressed the exact same legal issues raised in this case. The Court sees no reason to depart from these well-reasoned and supported rulings.

For the foregoing reasons, this Court holds the undefined phrase "structural damage" in the Policy at issue is defined as "damage to the structure." Furthermore, there is no clear

Case 8:13-cv-00978-EAK-TGW Document 30 Filed 03/18/14 Page 8 of 8 PageID 495

legislative intent to apply the statute retroactively, and retroactive application of the statute would substantially impair Plaintiff's contractual right to coverage under the Policy. Thus, the subsidence test is appropriate. Accordingly it is,

**ORDERED** Plaintiffs Motion for Summary Judgment is **GRANTED**. Plaintiffs are entitled to findings that:

(i) They are entitled to full subsidence investigation in accordance with Florida Statute, §627.707 (2010), and

(ii) "Structural damage" means, "damage to the structure".

The Clerk of the Court is directed to enter judgment for the Plaintiffs and to close this case.

As to the request of attorneys' fees in Plaintiffs' amended complaint, the Court grants the parties forty-five (45) days to resolve the issue. If the parties cannot come to an agreement then the Plaintiffs will have fifteen (15) days thereafter to file any appropriate motion.

**DONE** and **ORDERED** in chambers, in Tampa, Florida, this 18th day of March 2014.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

Copies to: All Parties and Counsel of Record